IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:15-CV-50-BO

| | |
|---|---|
| CHRISTY CLAUSELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | **ORDER** |
| ) | |
| BAYER CORPORATION, ) | |
| ) | |
| Defendant. ) | |

This matter is before the Court on plaintiff Christy Clausell's motion to amend the complaint [DE 20] and defendant Bayer Corporation's motion to dismiss [DE 22], both of which are ripe for ruling. For the following reasons, both motions are granted in part and denied in part.

BACKGROUND

Defendant Bayer Corporation is the parent company of plaintiff's former employer, Bayer CropScience LP (Bayer Cropscience). Plaintiff was employed at Bayer CropScience's Morrisville, North Carolina, facility from approximately August 2013 to August 2014. Plaintiff filed the instant suit against Bayer Corporation alleging a number of causes of action that all arise out of her employment with and termination from Bayer CropScience. Plaintiff filed an amended complaint on February 20, 2015, and now has moved to amend her amended complaint to add as defendants Bayer CropScience and Bayer AG. [DE 8, 20]. Bayer Corporation has moved to dismiss all of plaintiff's claims. [DE 22].

DISCUSSION

I. Plaintiff's Motion to Amend

Plaintiff's motion to amend seeks to add Bayer CropScience LP and Bayer AG as defendants. Bayer AG is a Germany company that is the parent company of Bayer Corporation,

while Bayer CropScience is a subsidiary of Bayer Corporation. [DE 14]. Plaintiff's motion states that she "was employed by BayerCropScience, which is a subgroup of Bayer AG," and that all policies and procedures are issued and maintained by Bayer AG, thus Bayer AG and Bayer CropScience are proper defendants. [DE 20]. Plaintiff did not file an amended complaint, but states that the second amended complaint will not change the paragraphs of the previously filed original and amended complaints. [*Id.*].

Rule 15 of the Federal Rules of Civil Procedure provides that a party may amend a pleading once as a matter of course before a responsive pleading is served. Fed R. Civ. P. 15(a)(1)(A). Otherwise, a party may amend its pleadings by leave of court or by written consent of the adverse party. Fed. R. Civ. P. 15(a)(2). The decision to allow leave to amend a pleading rests within the discretion of the trial court and should "be freely given when justice so requires." *Id.*; *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999) (noting that the Supreme Court has declared that courts must heed the directive of Rule 15(a) that leave to amend be freely given). Leave to amend should be denied only when the amendment would be prejudicial to the opposing party, when there has been bad faith on the part of the moving party, or when the amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).

Any claims against Bayer AG would be futile. Plaintiff has alleged only that Bayer AG issues and maintains employment policies, but has alleged no facts that would support adding Bayer AG as a defendant to any of plaintiff's claims. None of plaintiff's claims concern the inadequacy of Bayer's policies, although some do concern whether said policies were followed. Accordingly, amendment would be futile because plaintiff has not alleged sufficient facts to support a claim against Bayer AG. *See, e.g., Burns v. AAF–McQuay, Inc.*, 166 F.3d 292, 294–95 (4th Cir. 1999) (affirming denial of plaintiff's motion to amend complaint to add a hostile work

2

environment claim where plaintiff had not alleged facts to support proposed new claim). Plaintiff's motion to add Bayer CropScience as a defendant, however, would not be futile, as plaintiff admits that Bayer CropScience was, in fact, her employer. Accordingly, plaintiff's motion to amend is granted in part, as to Bayer CropScience, and denied in part, as to Bayer AG. Plaintiff is directed to file an amended complaint within fourteen days of the date of this order listing both Bayer CropScience and Bayer Corporation as defendants.

II. Defendant's Motion to Dismiss

Plaintiff's complaint contains roughly a dozen claims arising from her employment and termination from Bayer CropScience. The Court will consider each of these claims as if alleged against both Bayer CropScience and Bayer Corporation (collectively Bayer). Defendant has moved to dismiss all of plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

A Rule 12(b)(6) motion to dismiss for failure to state a claim for which relief can be granted challenges the legal sufficiency of a plaintiff's complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When ruling on the motion, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although complete and detailed factual allegations are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions . . . ." *Twombly*, 550 U.S. at 555 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Similarly, a court need not accept as true a plaintiff's "unwarranted

3

inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc., v. J.D. Assocs. Ltd.*, 213 F.3d 175, 180 (4th Cir. 2000).

A. ERISA

Plaintiff's first claim is for penalties under Section 502(c)(1) of ERISA, 29 U.S.C § 1102(c). Plaintiff appears to contend that Bayer failed to properly notify her of her rights to continuing health coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA) and requests penalties under 29 U.S.C. § 1132 as a result. COBRA requires employers and plan administrators to provide employees and beneficiaries with notice of their right to elect to continue group health plan coverage when there is a triggering event listed in the statute that causes (or will cause) a loss of plan coverage. 29 U.S.C. § 1161(a). COBRA's notification requirements are clear. An employer must notify the administrator of the group health plan within thirty days of termination, and the administrator has fourteen days to notify the employee of her right to continue coverage. 29 U.S.C. § 1166(a)(2), (c). Where a plan administrator fails to properly notify an employee of her right to continue coverage, § 1132(c) provides for civil penalties payable to the employee.

Plaintiff's complaint states that she has received both "no information regarding COBRA" since her termination and "COBRA notices and benefit cards on multiple occasions." [DE 8, p.5]. Piecing together the complaint and plaintiff's response in opposition to the motion to dismiss, it appears that plaintiff still had insurance coverage but had been terminated from employment with Bayer at the time the complaint was filed. Accordingly, plaintiff's allegations fail to demonstrate a violation of the COBRA notification requirements. As plaintiff clearly states that she had insurance coverage at the time she filed the complaint, the notification requirements of COBRA have not been triggered and plaintiff cannot state a claim for a penalty

4

under ERISA Section 502(c)(1), 29 U.S.C. § 1132(c)(1).

Plaintiff also appears to assert a claim for short-term disability benefits provided through the Bayer Corporation Disability Plan as well as a claim for breach of fiduciary duty. Plaintiff asserts these claims against Matrix Absence Management, rather than either of the defendants named in this suit. Though plaintiff states that her claims are "definitely geared towards Defendant," this does not override the fact that the claims in fact are alleged against Matrix Absence Management alone. [DE 24 at 3]. Because the claims are not asserted against either defendant, they do not state a claim for relief and must be dismissed. *See, e.g., Boykin Anchor Co. Inc. v. A T & T Corp.*, No. 5:10-CV-591-FL, 2011 WL 1456388 (E.D.N.C. Apr. 14, 2011).

Moreover, plaintiff has not alleged that she appealed the termination of benefits to the claims administrator for the short term disability plan. ERISA plan participants and beneficiaries "must both pursue and exhaust plan remedies before gaining access to the federal courts." *Gayle v. United Parcel Serv.*, 401 F.3d 222, 226 (4th Cir. 2005); *see also Hickey v. Dig. Equip. Corp.*, 43 F.3d 941, 945 (4th Cir. 1995) (requiring exhausting of plan remedies absent a "clear and positive" demonstration of futility). As she has not alleged that she exhausted the short term disability plan's administrative remedies, plaintiff's ERISA claim must be dismissed.[1]

B. Negligent Infliction of Emotional Distress

To state a claim for negligent infliction of emotional distress (NIED), plaintiff must demonstrate that "(1) the defendant negligently engaged in conduct, (2) it was reasonably

---

[1] In her reply, plaintiff argues that defendant did not comply with the requirements of ERISA's claims procedure. Although ERISA Section 503 provides a compulsory process for resolving claims and appeals off benefits claims, it does not provide participants with additional substantive rights, nor does a violation thereof entitle participants or beneficiaries to benefits or damages. *Sedlack v. Braswell Servs. Group*, 134 F.3d 219, 225 (4th Cir. 1998) (citing *Ashenbaugh v. Crucible Inc., 1975 Salaried Retirement Plan*, 854 F.2d 1516, 1532 (3d Cir. 1988), *cert denied*, 490 U.S. 1105 (1989).

5

foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Guthrie v. Conroy*, 567 S.E.2d 403, 410 (N.C. Ct. App. 2002) (quoting *Johnson v. Roark Obstetrics*, 395 S.E.2d 85, 97 (N.C. 1990)).

Plaintiff's complaint states that "Defendant's carelessness in 'losing Plaintiff's complaint' created a situation where Plaintiff suffered unnecessary mental and emotional injury," specifically causing her to suffer "with PTSD, anxiety and depression." [DE 8 at 8]. These allegations alone are insufficient to demonstrate that it was reasonably foreseeable that defendant's carelessness in losing a complaint would result in plaintiff's severe emotional distress. *See Cherry v. Perdue Farms, Inc.*, No. 2:10-CV-23-FL, 2010 WL 5437222 at *6 (E.D.N.C. Dec. 27, 2010) (dismissing plaintiff's NIED claim based upon employer's negligent failure to respond to her complaints of retaliation because defendant's failure to respond was "insufficient for the court to leap to the conclusion that it was reasonably foreseeable to defendants that the conduct would cause her severe distress."); *Bratcher v. Pharm Prod. Dev., Inc.*, 545 F. Supp. \2d 533, 546 (E.D.N.C. 2008) (dismissing plaintiff's NIED claim because it was unforeseeable that discriminatory conduct would cause severe emotional distress, rather than the "usual anger and disappointment associated with being discharged."). Here, plaintiff has not stated any facts that would indicate it was reasonably foreseeable to Bayer that she would have suffered PTSD, anxiety, and depression as a result of Bayer losing plaintiff's original complaint. Accordingly, she fails to state a NIED claim under North Carolina law.

C. Negligent Supervision

A plaintiff must allege and prove the following elements to succeed on a negligent supervision claim under North Carolina law: "(1) that an incompetent employee committed a

6

tortious act resulting in injury to the plaintiff; and (2) that prior to the act the employer knew or had reason to know of the employee's incompetency." *Smith v. First Union National Bank*, 202 F.3d 234, 249–50 (4th Cir. 2000) (citing *Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 124 (N.C. Ct. App. 1986). Where a plaintiff fails to show that an employee of the defendant-employer committed a common law tort recognized in North Carolina, a negligent supervision claim fails as a matter of law. *Jackson v. FKI Logistex*, 608 F. Supp. 2d 705, 708 (E.D.N.C. 2009) (relying on *McLean v. Patten Communities, Inc.*, 332 F.3d 714 (4th Cir. 2003) to dismiss plaintiff's negligent supervision claim arising from an alleged Title VII violation because it was not a common law tort).

Here, plaintiff alleges that Bayer "is liable for retaining Ms. Allen who is known to be a difficult person to work with," and for failing "to investigate and respond reasonably to prior allegations and interactions from current employees regarding Ms. Allen and Ms. Gadsby's behavior." [DE 8 at 8]. Plaintiff does not ground her negligent supervision claim in any common law tort recognized in North Carolina. Though Ms. Allen and Ms. Gadsby are mentioned in the sections of plaintiff's complaint discussing retaliation, neither harassment nor retaliation is a common law tort in North Carolina. *McLean*, 332 F.3d at 719. Nor can any alleged violation of the Title VII or the Americans with Disabilities Act by Ms. Allen or Ms. Gadsby support plaintiff's claim for negligent supervision. Accordingly, plaintiff's negligent supervision claim must be dismissed because she has failed to allege that any employee of either defendant engaged in conduct that constituted a tort at common law.

### D. Title VII and Americans with Disabilities Act (ADA)

Before a plaintiff may file suit under Title VII or the ADA, she is required to file a charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e–5(f)(1); 42 U.S.C. § 12117(a). "The

7

scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). A claim in federal court will be barred if, for example, the EEOC charge alleges discrimination on the basis of race and the formal litigation claim alleges discrimination on another basis, such as sex. *Id.* Additionally, if a plaintiff fails to exhaust administrative remedies, the federal court lacks jurisdiction over the claim. *See id.* at 300; *Davis v. Va. Commonwealth Univ.*, 180 F.3d 626, 628 n.3 (4th Cir. 1999). Here, plaintiff's EEOC claims, filed on July 11, 2014, allege disability on the basis of race and disability. [DE 29].

### 1. HOSTILE WORK ENVIRONMENT

Plaintiff appears to proceed under a hostile work environment claim pursuant to Title VII. [DE 8 at 9–10]. To establish such a claim, plaintiff must demonstrate that: (1) she experienced unwelcome harassment; (2) the harassment was based on a protected status; (3) the harassment was severe or pervasive enough to create an abusive employment atmosphere; and (4) a factual basis exists to impose liability on the employer. *Baqir v. Principi*, 434 F.3d 733, 745–46 (4th Cir. 2006) (discussing claim under Title VII); *Fox v. Gen. Motors Corp.*, 247 F.3d 169, 177 (4th Cir. 2001) (discussing claim under ADA). Title VII does not, however, protect against all types of discrimination or harassment in the workplace; the harassment must be tied to plaintiff's status as a member of a protected class. *See, e.g., Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

Plaintiff does not allege that she is part of a protected class. Moreover, even assuming plaintiff is part of a protected class, her allegations bear no relation to any protected class. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] . . .

because of . . . sex."). She does not state who engaged in any of the listed acts or why they did it, nor does she imply or state that any of the listed harassment was directed at her because of her membership in a protected class. [DE 8 at 8–9]. Accordingly, plaintiff has failed to state a hostile work environment claim against either defendant. *See, e.g., Bass*, 324 F.3d at 765 (affirming dismissal where allegations of harassment "merely [told] a story of a workplace dispute" not related to a protected class); *Gray v. Wal-Mart Stores, Inc.*, 7:10-CV-171-BR, 2011 WL 4368415 at *7 (E.D.N.C. Sept. 19, 2011) ("Absent allegations of harassment based on plaintiff's [protected class], a generalized job grievance is not sufficient to state a claim.").

2. RETALIATION AND RETALIATORY DISCHARGE

Plaintiff appears to bring Title VII claims for both retaliation and retaliatory discharge. [DE 10–11, 12]. To state a claim for retaliation, she must show that: (1) she engaged in protected activity; (2) defendant took employment action against her that a reasonable employee would find materially adverse; and (3) defendant took the materially adverse employment action because of the protected activity. *Foster v. Univ. of Md.-Eastern Shore*, 787 F3d 243, 250 (4th Cir. 2015); *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 443 (4th Cir. 1998) (overruled on other grounds).[2] A close temporal relationship between the protected activity and the alleged adverse action may be sufficient to establish a causal connection at the pleading stage. *See Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (discussing the problem within the failure to hire context); *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (holding that "temporal proximity" must be "very close" to satisfy this third element).

---

[2] Defendants argue that the Supreme Court's decision in *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 133 S.Ct.2517, 2534 (2013), requires plaintiff to establish that the protected activity was a but-for cause of the adverse employment action. The Fourth Circuit recently held, however, that *Nassar* has no bearing on the causation prong of the prima facie case under the pretext framework, which is what is at issue here. *Foster* 787 F.3d at 251.

9

In the "retaliation" section of her complaint, plaintiff has not pled facts in support of any of the three required elements of the *prima facie* case. She has not identified any specific protected activity. Section 704(a) of Title VII explains that an employee engages in protected activity when he "oppose[s] any practice made an unlawful employment practice" or makes "a charge, testifie[s], assist[s], or participate[s] in any manner in an investigation, proceeding, or hearing . . . ." 42 U.S.C. § 2000e—3(a). The only activity referenced by plaintiff is an "initial complaint . . . due to failing to provide training and transfer work to Plaintiff." [DE 8 at 10]. A complaint about a workplace problem that does not involve protected activity does not constitute protected activity for purposes of a Title VII retaliation claim. *See, e.g., Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (defining opposition activity). *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999) (defining participation activity) (abrogated on other grounds). Even assuming that plaintiff intended to rely on the filing of a workman's compensation claim as protected activity, she also fails to identify any employment action defendant allegedly took against her that a reasonable employee would find to be materially adverse. She states only that "[n]o actions were ever taking to provide Plaintiff with requested materials to complete work assignments" and that Ms. Allen told Ms. Gadsby she had trained plaintiff when "that was not the case." [DE 8 at 10]. Nor has plaintiff pled facts that demonstrate that the employment action was causally related to the protected activity.

In the section of the complaint titled "retaliatory discharge," however, plaintiff alleges that she filed for worker's compensation due to the actions of Matrix Absence Management, had an "outstanding complaint . . . regarding the treatment and inaction of her supervisor and HR Business partner," and filed "an EEOC complaint on July 11, 2014." [DE 8 at 12]. She does not directly connect any these events with her termination, but states that her "employment was

10

terminated" after she filed the EEOC complaint, on July 22, 2014. [*Id.*]. At this stage, however, the very close temporal proximity between the filing of the EEOC complaint and plaintiff's termination is sufficient for her to establish a *prima facie* case. Defendants' motion to dismiss, therefore, is denied as to plaintiff's retaliatory discharge claim, but granted as to the general retaliation claim.

### 3. FAILURE TO ACCOMMODATE

Plaintiff's complaint contains two sections that reference the ADA, both of which appear to allege that she was not provided with reasonable accommodation for her disability.[3] [DE 8 at 14, 18]. A plaintiff establishes a prima facie failure to accommodate case by showing that "(1) she was an individual with a disability within the meaning of the ADA; (2) the employer had notice of her disability; (3) with reasonable accommodation, she could perform the essential functions of the position; and (4) the employer refused to make such accommodations." *Haneke v. Mid-Atlantic Capital Mgmt.*, 131 F. App'x 399, 400 (4th Cir. 2005). The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Major life activities include "speaking," "concentrating," "thinking, "communicating," and working." *Id.* §12102(2)(A).

The last section of plaintiff's complaint also states that Bayer responded to her EEOC complaint by stating that it was not aware of a disability. [DE 8 at 18]. The Court incorporates that paragraph into plaintiff's failure to accommodate claim, as notice is one of the requisite elements of a failure to accommodate claim. *See Haneke*, 131 F.App'x at 400. For the purposes

---

[3] It does not appear that plaintiff brought a wrongful discharge claim under the ADA. To the extent that a section of her complaint is intended to do so, that claim must be dismissed. There are no facts in the complaint addressing whether she was performing her job at a level that met her employer's expectations. *Haneke*, 131 F.App'x 399, 400 (4th Cir. 2005).

11

of plaintiff's ADA claim, the Court will assume that plaintiff did inform her supervisor and business partner of her disability.

Plaintiff alleges that she suffers from anxiety. [DE 8 at 18]. Anxiety can be a valid disability for purposes of the ADA. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 572 (4th Cir. 2015). However, nowhere does plaintiff's complaint discuss any major life activities that were substantially limited by her anxiety. Although plaintiff states that she requested accommodations at work, including preparing a handout rather than doing a presentation and being allowed to take vacation time rather than unpaid time off to attend counseling sessions, these requested accommodations do not demonstrate that plaintiff's anxiety substantially limited her ability to work. Plaintiff's discussion of her anxiety is limited solely to the fact that she suffers from it.

Moreover, plaintiff has not demonstrated that she was unable to perform the essential functions of her position without the necessary accommodations. Although some of the accommodations listed in the complaint seem to relate to anxiety, such as preparing a handout rather than doing a presentation, plaintiff's complaint contains no facts that could be construed as explaining how such accommodations would enable her to perform the essential functions of the position. In sum, taking the facts alleged by plaintiff to be true, she has not demonstrated that she has a disability within the meaning of the ADA or that the requested accommodations would allow her to perform the essential functions of her job with Bayer. As such defendant's motion to dismiss plaintiff's ADA claims must be granted.

E. <u>Wrongful Discharge</u>

In North Carolina, "employment is generally terminable by either the employer or employee for any reason where no contract exists specifying a definite period of employment.

This is a bright-line rule with very limited exceptions." *McDonnell v. Tradewind Airlines, Inc.*, 670 S.E.2d 302, 305 (N.C. Ct. App.), *disc. rev. denied*, 675 S.E.2d 657 (N.C. 2009) (internal citations and quotations omitted). Courts have recognized only three exceptions to this rule: (1) where the employee is terminated for refusing to violate the law at the employer's request; (2) where the employee is terminated for engaging in protected activity; or (3) where the employee is terminated based upon an activity by the employer contrary to law or public policy. *Id.* To survive a motion to dismiss a claim that an employer's action was contrary to public policy, a plaintiff must allege "specific conduct by a defendant that violated a specific expression of North Carolina public policy." *Considine v. Compass Grp. USA, Inc.*, 551 S.E.2d 179, 184 (N.C. Ct. App. 2001).

Plaintiff alleges that she was told she terminated because of her attendance. [DE 8 at 11]. She also alleges that she "had reported concerns regarding purchasing policy and usage at the start of employment." [*Id.*]. She has not, however, made allegations that her termination was for one of recognized exceptions to North Carolina's employment-at-will doctrine. Her claim for wrongful termination is dismissed as to both defendants.

F. Attempted Constructive Discharge

Neither the Fourth Circuit nor North Carolina courts appear to recognize a claim for attempted constructive discharge. Constructive discharge occurs when "an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186–87 (4th Cir. 2004) (quoting *Martin v. Cavalier Hotel Corp.*, 548 F.3d 1343, 1353–54 (4th Cir. 1995). "Intolerability of working conditions, as the circuits uniformly recognize, is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." *Bristow v. Daily Press,*

13

*Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985) (internal citation omitted), *cert. denied*, 475 U.S. 1082 (1986). "[D]issatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." *Carter v. Ball*, 33 F.3d 450, 459 (4th Cir. 1994).

Though plaintiff claims that "attempts were made to make the Plaintiff so uncomfortable that she would quit," notably, plaintiff never alleges that she actually resigned from her employment because of these attempts. Accordingly, any claim for constructive discharge fails as a matter of law. *See, e.g., Bristow*, 770 F.2d at 1255 ("The employment discrimination laws require as an absolute precondition to suit that some adverse employment action have occurred."). Here, plaintiff has not alleged that she resigned, thus her claim for "attempted constructive discharge" must be dismissed as to both defendants.

G. Libel and Slander

In order to recover for defamation, plaintiff must show that defendant: (1) made false, defamatory statements of or concerning the plaintiff, which where (2) published to a third person, (3) causing injury to the plaintiff's reputation. *Boyce & Isley, PLLC v. Cooper*, 710 S.E. 2d 309, 317 (N.C. Ct. App. 2011). Defamation can be in the form of libel, which is written, or slander, which is oral. *Cummings v. Lumbee Tribe of North Carolina*, 590 F. Supp. 2d 769, 774 (E.D.N.C. 2008).

Plaintiff bases her libel and slander claims on statements by William Klemick, who was allegedly defendant's Vice President and Assistant General Counsel during the EEOC investigation. [DE 8 at 3, 12–13]. Plaintiff alleges that, during the EEOC investigation, Mr. Klemick stated that plaintiff had "misappropriation of purchasing card funds." [DE 8 at 13]. Statements made in quasi-judicial proceedings, however, are subject to an absolute privilege and

14

Case 5:15-cv-00050-BO   Document 30   Filed 09/01/15   Page 14 of 17

cannot subject the defendant to liability for libel or slander. *Smith v. McDonald*, 895 F.2d 147, 149 (4th Cir. 1990) (citation omitted); *Angel v. Ward*, 258 S.E.2d 788, 792 (N.C. Ct. App. 1979). Quasi-judicial proceedings include the actions of "public administrative officers who are required to investigate facts, or ascertain the existence of facts, and draw conclusions from them, as the basis for their official action, and to exercise discretion of a judicial nature." *Id.* at 792. Such fact-finding is precisely what the EEOC does in the course of investigating a charge of discrimination filed by an employee. *See, e.g., Shabazz v. PYA Monarch, LLC*, 271 F. Supp. 2d 797, 803 (E.D.Va. 2003); *Kingsdown, Inc. v. Hinshaw*, 2015 NCBC 28, *11 (N.C. Super. Ct. Mar. 25, 2015). Accordingly, plaintiff's claims for libel and slander must be dismissed as to both defendants for failure to state a claim under which relief can be granted.

H. Breach of Implied Contract

Plaintiff's breach of contract claim is predicated on Bayer's Corporate Compliance Policy (the Policy), which contains a provision stating that Bayer "will not tolerate retaliation against any employee who seeks advise, raises a concern, or reports suspected misconduct in good faith." [DE 8 at 13]. Plaintiff contends that Bayer violated the Policy by failing to protect her from retaliation when she reported feeling unsafe in the workplace. [*Id.*].

Plaintiff discusses only the Policy, which is an express, written, policy, thus it is unclear what constitutes an implied contract. Under North Carolina law, an employee handbook or policy manual does not create a contractual agreement between employer and employee" unless "the terms of the handbook are "expressly incorporated into a separately existing employment contract . . . ." *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 585 (M.D.N.C. 2003) (citing *Walker v. Westinghouse Electric Corp.*, 335 S.E.2d 79, 83–84 (N.C. Ct. App. 1985); *see also Williamson v. Carolina Power and Light Co.*, 754 F. Supp. 2d 787, 793 (E.D.N.C. 2010).

15

Plaintiff has not alleged that an employment contract existed between her and Bayer, let alone that the Policy was expressly included in any such contract. Like the plaintiff in *Norman*, plaintiff alleges that the only contract is the handbook and policy.

Plaintiff simply alleges that Bayer failed to follow its own guidelines while employing her. This cannot support a claim for breach of a contract, *see Norman,* 286 F. Supp. 2d at 588, thus her breach of contract claim must be dismissed.

I. Gross Negligence

To state a claim for gross negligence, a plaintiff must allege; (1) defendant owed a duty to the plaintiff; (2) defendant breached that duty; (3) the breach was a proximate cause of the injury; (4) plaintiff was injured as a result thereof; (4); and (5) defendant acted willfully, wantonly, or with reckless indifference. *Clayton v. Branson*, 613 S.E. 2d 259, 264 (N.C. Ct. App. 2005); *Ross v. Tenn. Comm. Warehouse, Inc.*, No. 3:14–CV–391, 2014 WL 4672424 at *2 (W.D.N.C. Sept. 18, 2014). "An act or conduct rises to the level of gross negligence when the *act* is done purposely and with knowledge that such act is a breach of duty to others, i.e., a *conscious* disregard for the safety of others." *Yancey v. Lea*, 550 S.E.2d 155, 158 (N.C. 2001) (emphasis in original).

Plaintiff argues that Bayer was grossly negligent by failing to take corrective action in response to her complaints of "workplace concerns," causing plaintiff to deal with "unreasonable behavior" from October 22, 2013, to January 8, 2014. [DE 8 at 15]. Specifically, plaintiff alleges that Bayer was "reckless," showed "a lack of care," and demonstrated "serious carelessness in providing a safe workplace." Her allegations simply do not rise to the level of an act committed purposely and with a conscious disregard for the safety of others, as required to state a claim for gross negligence. *Lea*, 550 S.E. 2d at 158. There were no allegations that defendant purposely

16

and consciously ignored plaintiff's complaint or that they were conscious that failure to address her complaint would threaten plaintiff's safety. Plaintiff's complaint quite literally states that Bayer was reckless and careless, therefore she cannot establish that any defendant acted with the requisite mental state, and her gross negligence claim must be dismissed.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to amend [DE 20] is GRANTED IN PART as to Bayer CropScience and DENIED IN PART as to Bayer AG. Plaintiff is DIRECTED to file an amended complaint within 10 days of the date of this order naming Bayer CropScience and Bayer Corporation as defendants. Defendants' motion to dismiss [DE 22] is GRANTED IN PART and DENIED IN PART. Only plaintiff's Title VII retaliatory discharge claim may proceed.

SO ORDERED, this **31** day of August, 2015.

TERRENCE W. BOYLE
United States District Judge